310 F.2d 899
 UNITED STATES of America for the use of GENERAL ELECTRIC
COMPANY, a corporation, Appellant,
v.
GUNNAR I. JOHNSON & SON, INC., a corporation, and St. Paul
Fire and Marine Insurance Company, a corporation, Appellees.
 No. 17074.
 United States Court of Appeals Eighth Circuit.
 Dec. 28, 1962, Rehearing Denied Jan. 28, 1963.
 
 1
 Harold Jordan, St. Paul, Minn., made argument for appellant and filed brief.
 
 
 2
 George X. Connor, Hopkins, Minn., made argument for appellee and filed brief.
 
 
 3
 Before MATTHES and BLACKMUN, Circuit Judges, and REGISTER, District judge.
 
 
 4
 REGISTER, District Judge.
 
 
 5
 This is an action commenced under the provisions of the Miller Act,40 U.S.C.A. 270b, for the recovery of a certain sum alleged to be due the appellant for materials furnished the appellee Gunnar I. Johnson & Son, Inc., a corporation. The sole issue is whether the written notice of claim given by the use plaintiff (appellant) to the prime contractor, Gunnar I. Johnson & Son, Inc., (appellee) was given within ninety days from the date on which said appellant furnished the last of the material for which such claim is made, as required by said statute.[1]
 
 
 6
 This case was submitted on a written Stipulation of Facts, which facts, as so stipulated, constitute the sole evidence herein. On June 29, 1959, the appellee, Gunnar I. Johnson & Son, Inc., as prime contractor, entered into a written contract with the United States of America, Department of the Army, for the construction of certain facilities at the United States Air Force Base at Willmar, Minnesota. The bond required by the Miller Act (40 U.S.C.A. 270a) was executed by the prime contractor, as principal, and by St. Paul Fire and Marine Insurance Company, as surety. The electrical work was subcontracted to John M. Schroeder, inc. Said subcontractor entered into a contract with the appellant (use-apaintiff) wherein appellant agreed with subcontractor to supply various items of electrical materials to such job. It will be helpful to quote specific portions of the Stipulation which are of vital importance to the disposition hereof.
 
 
 7
 'Subcontractor ordered from plaintiff from time to time various items of electrical equipment and materials for delivery to the job site for use in prosecution of the contract. Plaintiff maintained a running account for the materials so furnished to said job site under a separate job account * * *. As each delivery was made, plaintiff sent subcontractor an invoice as to the materials so delivered. A monthly statement of the balance in the job account was sent to subcontractor.
 
 
 8
 'The materials shipped by plaintiff to said job site were ordered by the subcontractor by means of a series of written purchase orders * * *.
 
 
 9
 'Except for Purchase Order 15276 (dated July 29, 1959) all other purchase orders covered miscellaneous electrical supplies. The main purchase order was No. 15276 which covered an entire electrical equipment distribution system. The component parts making up said system were delivered in sections over a period of time. Until all of the component parts were delivered to the job site the distribution system engineered for this project was incomplete. With respect to the shipment dated December 23, 1959, there was returned to the factory two bus duct elbows which required alteration before they could be installed in the project. Said items were reshipped from the factory to the job site on April 5, 1960 on a 'NO CHARGE' basis.
 
 
 10
 'On April 6, 1960, plaintiff mailed a letter of notification of a claim with respect to materials furnished by plaintiff on said job site * * *.
 
 
 11
 'On April 7, 1960, Mr. Gunnar I. Johnson, in order to induce plaintiff to complete delivery of materials on all of the job sites[2] covered by this suit, promised plaintiff that the Johnson Corporation would guarantee payment for all materials thereafter to be delivered by plaintiff for completion of said contracts. At the time of the making of such promise, the said Gunnar I. Johnson was informed of the inability of subcontractor to make payment for said materials.'
 
 
 12
 Attached to, and constituting a part of such Stipulation, is a correct statement of the entire account for said job taken from plaintiff's records, copies of all of said purchase orders, and a table showing dates on which the materials called for in such purchase orders were shipped to the job sites.
 
 
 13
 The amount of the claim here in suit is $7,383.73. This claim is comprised of the sum of $7,003.71 as balance unpaid on the main purchase order, and of the sum of $380.02 balance remaining unpaid on four small purchase orders for miscellaneous items, on April 6, 1960, which respective balances remained after the proper allocation of payments and credits to which the subcontractor was entitled at that time on the purchase price of items previously purchased and furnished. The shipping dates of such four miscellaneous items were October 21, November 21, December 15, and December 30, 1959, respectively. The shipping dates and amounts of the shipments of component parts of the entire electrical system (main purchase order) here involved are:
 
 
 14
 November 10, 1959 .............. $ 210.25
December 3, 1959 ............... 4899.00
December 23, 1959 .............. 2014.00
 Total ................... $7123.25
on which there is a credit of .... 119.54
leaving balance of such claim
 of ......................... $7003.71
 
 
 15
 The only notice served or given by appellant was dated and mailed on April 6, 1960, and was received by the prime contractor, Gunnar I. Johnson & Son, Inc., (appellee) on April 7, 1960. No question is raised herein as to the adequacy of the contents of the notice or of the validity of its service.
 
 
 16
 From the stipulated facts it is apparent that the main purchase order covered an entire electrical distribution system which was to be engineered, manufactured and prepared at appellant's factory for this job and delivered to the job site; that said main purchase order constituted one entire contract; that the component parts making up the entire system were delivered in sections over a period of several months; that on April 6, 1960, not all of the component parts had been shipped; that on April 6, 1960, the performance of such contract was incomplete, and that the remainder of the component parts were shipped subsequent to the date on which the notice of claim was made. The record discloses that the component parts of such system which were furnished after April 7, 1960, were furnished pursuant to direct contractual relationship then existing between the appellant and said appellee Gunnar I. Johnson & Son, Inc., that the cost of all thereof was paid by the said appellee, and that no part thereof is included in the claim here involved. Such direct contractual relationship between the appellant and said appellee Gunnar I. Johnson & Son. Inc., was created on April 7, 1960, and related only to materials furnished on and after that date.
 
 
 17
 This direct contractual relationship arose from said appellee's express promise to appellant, made on April 7, 1960, that it 'would guarantee payment for all materials thereafter to be delivered by plaintiff for completion of said contracts'. See 'Bonds of Contractors on Federal Public Works-- Miller Act', Boston University Law Review, Vol. 36, pp. 499, 538. Said appellee did not promise to pay for any material funished prior to said date.
 
 
 18
 The record is clear that prior to April 7, 1960, there was no direct contractual relationship, express or implied, between the appellant and Gunnar I. Johnson & Son, Inc., said appellee. Therefore, as to the claim here involved, the requirement in the Miller Act as to the giving of a written notice by the appellant to said appellee 'must be held to be mandatory, as a strict condition precedent to the existence of any right of action upon the payment bond'. United States for Use and Benefit of American Radiator & Standard Sanitary Corporation v. Northwestern Engineering Co. et al. (8 Cir.), 122 F.2d 600, 602. See also: Fleisher Engineering & Construction Co. et al. v. United States for the Use and Benefit of Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12; Bowden et al. v. United States of America for the Use of Emmet J. Malloy (9 Cir.), 239 F.2d 572, 577, cert. denied 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909; Cooley v. Barten & Wood, Inc. et al. (1 Cir.), 249 F.2d 912; United States, for the Use and Benefit of John A. Denie's Sons Co. v. Bass et al. (6 Cir.), 111 F.2d 965; Coffee et al. v. United States, for Use and Benefit of Gordon (5 Cir.), 157 F.2d 968.
 
 
 19
 From the stipulated evidence the trial court made certain findings of fact. Included therein are the following:
 
 
 20
 '22. That use-plaintiff shipped the last of the materials for which such claim is made on December 30, 1959. The ninety (90) day period expired on the 29the day of March, 1960. The notice of claim was mailed more than ninety (90) days after the shipment of December 30, 1959. '23. That the reshipment of April 5, 1960, is a furnishing of material for which no claim is made and cannot properly be included in use-plaintiff's claim. '25. That said notice was not timely within the meaning of 40 U.S.C.A. 270b.'
 
 
 21
 Such findings are in accord with the contentions of appellees.
 
 
 22
 It should be noted that apparently the respective parties, and also the trial court, considered the shipment of the various respective items and components to be the 'furnishing' of the same, within the meaning of the statute. The table, marked Exhibit C, attached to and constituting a part of the Stipulation of Facts, indicates the dates on which the materials called for in the purchase orders were shipped to the job site. The respective dates of delivery to the job site, or receipt at that site by the subcontractor, are not shown. Such Stipulation, constituting the sole evidence herein, states that 'With respect to the shipment dated December 23, 1959, there was returned to the factory two bus duct elbows which required alteration before they could be installed in the project. Said items were reshipped from the factory to the job site on April 5, 1960 on a 'NO CHARGE' basis.' The date of delivery thereof to the job site, or receipt thereof by the subcontractor, is not stated. Therefore, in view of the manner in which the facts are submitted and the apparent acceptance by the respective parties and the trial court of the shipment date as constituting the date on which the said items were 'furnished' within the meaning of the statute, this Court will also accept the shipment dates for the same purpose without, however, deciding the same to be correct as a mateter of law.
 
 
 23
 The question thus narrows itself to a determination of whether the two bus duct elbows above referred to were 'furnished' on December 23, 1959, or on April 5, 1960. This Court is limited in its consideration of the facts to those stipulated. There is no evidence before us as to the cost or value of such elbows, or as to whether they were of major or minor importance. However, the stipulated facts do disclose that the bus duct elbows were component parts of the entire electrical equipment distribution system; that this system was engineered for this specific project; that said duct elbows were essential component parts, without which the system was incomplete; that, at the time they were initially shipped on December 23, 1959, they were in such a defective or improperly prepared condition that they could not be installed in the system; and that after being altered in order to meet the requirements for their installation into the system, they were re-shipped from the factory to the job site on April 5, 1960-- such reshipment being on a 'no charge' basis. The invoice for the December 23, 1959, shipment was dated January 12, 1960.
 
 
 24
 It is obvious that said bus duct elbows are a part of the material 'for which claim is made'. Regardless of how these items were handled from a bookkeeping standpoint, or invoiced or billed, it is apparent that, until such time as they were 'furnished' in such condiion as to meet the engineering requirements and be ready and fit for installation as a part of the sytem, no enforceable claim did or could arise. Neither the original shipment of these items on December 23, 1959, nor the premature and unenforceable billing thereof by invoice on January 12, 1960, gave rise to an enforceable claim therefor. An enforceable claim therefor arose for the first time when they were 'furnished' in usable condition, subsequent to their necessary alteration, and regardless of the fact that such reshipment was on a 'no charge' basis.
 
 
 25
 We therefore hold that under the evidence herein, such duct elbows were 'furnished' on April 5, 1960, that the notice here involved was timely, and that the findings of fact of the trial court, hereinbefore quoted, are clearly erroneous.
 
 
 26
 Factually and in principle this case is readily distinguishable from those cases involving the performance of labor and supplying of minor items of materials for the purpose of correcting defects, or making repairs following inspection of the project, and not performed or supplied as a part of the original contract. United States of America for the Use of McGregor Architectural Iron Co., Inc. v. Merritt-Chapman & Scott Corporation et al., D.C., 185 F.Supp. 381; and United States of America to the Use of John T. Evanick & Company v. Merritt-Chapman & Scott Corporation et al., D.C., 185 F.Supp. 587, aff'd 295 F.2d 186 (3 Cir.), 78 ALR2d 412, 420.
 
 
 27
 Reversed, with directions that judgment be entered in accordance with this opinion, in favor of appellant, for the sum of $7,383.73 (Seven Thousand, Three Hundred Eighty Three Dollars and Seventy Three Cents), with interest thereon from April 5, 1960, and costs.
 
 
 
 [1]
 Section 270b provides in part as follows:
 'Provided, however, that any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized, by law to serve summons.'
 
 
 [2]
 Job-sites are referred to in the Stipulation of Facts. The original action embraced two counts. However, the trial court's disposition of one of these counts is not involved in this appeal