The UNITED STATES of America for the Use of NOLAND COMPANY, Appellee,

v.

Charles B. ANDREWS and Elbert L. Parrish, each individually and trading as Andrews & Parrish, and the Fidelity and Casualty Company of New York, Appellants.

No. 12673.

United States Court of Appeals Fourth Circuit.

Argued Dec. 2, 1968.

Decided Jan. 24, 1969.

G. Kenneth Miller, Richmond, Va. (May, Garrett, Miller & Newman, Joseph T. Mizell, Jr., and Mizell, Gayle & Binns, Richmond, Va., on brief), for appellants.

Jack B. Russell, Richmond, Va. (J. Terry Parsley and Browder, Russell, Little & Morris, Richmond, Va., on brief), for appellee.

Before SOBELOFF, WINTER and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

This is an action arising under the Miller Act, 40 U.S.C.A. § 270a, in which use-plaintiff Noland Company seeks recovery from the general contractor, Andrews & Parrish,[1] and its surety, the Fidelity and Casualty Company of New York. The claim is for the unpaid balance on open account for materials supplied to Wade Mechanical Corporation, the plumbing and fixture subcontractor on a renovation and construction project at Camp A. P. Hill, Virginia. Upon entry of judgment for Noland in the District Court, the defendants appealed.

Under the Miller Act, a materialman may call upon the general contractor to answer for debts of a subcontractor only if he has given notice of his claim in the manner and within the time required by section 270b(a).[2] The defendants assert that the present action is barred for the reason that Noland's notice of claim on January 25, 1967 was not given "within ninety days from the date on which such person * * * supplied the last of the material for which such claim is made."

At trial it was shown that Andrews & Parrish, after being awarded the A. P. Hill contract by the Government, subcontracted the plumbing and fixture work to Wade. From time to time during 1966 Wade ordered materials from Noland for use on this job. On October 17 of that year, Andrews notified the Government that the work which Wade had been performing was complete. Thereupon the Government made a "final inspection" in

---

1. Charles B. Andrews and Elbert L. Parrish were named defendants individually and trading as a partnership. Wade Mechanical Corporation was also a defendant below but has not joined in this appeal.

2. The Miller Act, 40 U.S.C.A. § 270b(a) provides:

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

which it found the work acceptable, except for a small list of deficiencies requiring correction. These corrections were made immediately, and the Government then accepted the job and took possession of the premises, not later than October 22, 1966. Apparently, Noland did not participate in the inspection which led to acceptance of the job.

The following January, while Mr. Wade was at Camp A. P. Hill in connection with an entirely unrelated matter, he discovered quite by chance that two gate valves, which it is undisputed were required under the contract between Andrews and the Government, had not been furnished or installed. Wade called the Government's attention to the omission, and it requested him to install the valves. Upon receipt of an order from Wade, Noland delivered them on or about January 17, 1967, and they were put in place by Wade. On January 25, Noland sent Andrews a written notice[3] asserting that the latter was obligated to it on Wade's unpaid balance for all materials supplied by Noland for the A. P. Hill job, including those delivered in 1966. Wade apparently was then in financial difficulty and later went into bankruptcy.

The question for our determination is whether the notice of January 25, 1967 which was well within ninety days after the delivery of the valves, but not within ninety days after the delivery of the materials previously furnished for the job, complies with the requirement of 40 U.S.C.A. 270b(a) and permits Noland to recover for all materials furnished to Wade for use at the A. P. Hill site. The last delivery before the one in January was made on October 19, 1966.

■ The defendants vigorously maintain that the notice was too late, reasoning that January 17, 1967, when the valves were delivered, should not be held "the date on which such person * * * supplied the last of the material for which such claim is made." They contend that the valves were not furnished "in the prosecution of the work" because

the Government had accepted the job and taken possession of the premises in October, 1966. Their theory is that the installation of the valves must be termed a mere "correction of a defect" which, under the decided cases, does not extend the time for giving notice under the Miller Act.

The plaintiff, on the other hand, relies on the undisputed fact that the valves were contracted for as part of Andrews' original undertaking. It maintains that the job was not complete until the valves were installed, regardless of the fact that the parties may have erroneously thought the work was finished in 1966. Accordingly, it submits that the January 25 notice, given within ninety days after the valves were delivered on January 17, fully complies with the statute and entitles it to recover the entire amount due.

■ The applicable legal test, as the parties correctly perceive and as the Ninth Circuit stated in United States ex rel. Austin v. Western Elec. Co., 337 F. 2d 568, 572–573 (9 Cir. 1964), is "whether the work was performed and the material supplied as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.'" It seems plain to us that the installation of the two missing valves cannot be characterized as a mere correction of a defect. The fact that the valves were called for by both the primary contract and the subcontract and were not furnished till January 17, 1967, is dispositive of the issue, notwithstanding the Government's acceptance of the premises at an earlier date under the mistaken impression that the work had been completed. The valves were installed by Wade at no extra charge to the Government or to the general contractor. Neither the contractor nor the subcontractor was ever in doubt as to its obligation to install the valves in order to finish the job.

It may be noted in passing that in the interval between the expiration on January 17, 1967 of the ninety day period

---

3. The tenor and content of the notice have not been questioned by the appellants.

following the last delivery in October, 1966 and January 25, 1967, the date of Noland's notice, Andrews made no payments to Wade, so that Andrews was in no way prejudiced by the fact that the notice was not given within ninety days from the October date upon which the defendants rely; but we do not rest our decision upon this circumstance.

It is our conclusion that the contract was not completed until the valves were installed, and that their delivery in January is the critical date from which to measure the Miller Act limitation period. United States ex rel. General Elec. Co. v. Gunnar I. Johnson & Son, Inc., 310 F.2d 899 (8 Cir. 1962); United States ex rel. Bourquin & Co. v. Chester Const. Co., 104 F.2d 648 (2 Cir. 1939). See also United States ex rel. Palmer Asphalt Co. v. Debardelaben, 278 F.Supp. 722 (D.S.C. 1967), aff'd, 388 F.2d 309 (4 Cir. 1967).

Defendants' reliance on United States ex rel. McGregor Architectural Iron Co. v. Merritt-Chapman & Scott Corp., 185 F.Supp. 381 (M.D.Pa. 1960), is ill-founded. In that case, Merritt-Chapman & Scott Corp., a Miller Act general contractor, subcontracted part of its work to the Frederick Raff Company. Raff subcontracted certain of its work to John T. Evanick & Co., which in turn entered into contracts with the use-plaintiff, McGregor Architectural Iron Co., under which the latter agreed to furnish and erect a coal bunker and certain bridle and head posts. McGregor completed performance of the contracts early in 1954. An inspection in 1955 disclosed that a number of bolts were missing and that some holes burned into the posts for erection purposes had not been closed. Shortly after the defects had been corrected, McGregor sent Merritt-Chapman a registered letter demanding payment of the balance due McGregor from Evanick. The question at issue was whether this notice, being within ninety days of the corrective work in 1955, was timely. The court's holding that the notice was late was predicated upon its interpretation of the record and its finding that McGregor had completed the work in

1954. It stated the rule we apply in the instant case:

> [U]nder the Miller Act a subcontractor may not recover on the bond unless he delivers materials or performs labor *called for by the terms of the prime contract* and also serves the notice within ninety days after the date of such delivery or performance. (Emphasis added.) Id. at 383.

Whatever view one may take of the court's appraisal of the facts developed upon that record, the rule of law laid down in *Merritt-Chapman* is consistent with the holding we announce in the instant case.

■ Noland's notice being timely, recovery of the entire unpaid balance due it from Wade was properly allowed. This is the command of the statute regardless of whether the subcontractor entered into a single contract with its supplier or, as was the case here, purchased materials under a series of separate orders. Noland Co. v. Allied Contractors, Inc., 273 F.2d 917 (4 Cir. 1959); T. F. Scholes, Inc. v. United States ex rel. Lock Joint Pipe Co., 297 F.2d 337 (10 Cir. 1961); United States ex rel. Chemetron Corp. v. George A. Fuller Co., 250 F.Supp. 649 (D.Mont. 1966); United States ex rel. Freedman Supply Co. v. M. S. I. Corp., 246 F.Supp. 337 (D.N.J.1965); United States ex rel. Eoff Elec. Co. v. Mann, 196 F.Supp. 185 (D.Ore.1961); United States ex rel. Edwards & Co. v. Bregman Const. Corp., 172 F.Supp. 517 (E.D.N.Y. 1959).

It is not necessary to consider appellants' further contention that Noland's claim must fail because the valves were delivered more than ninety days after the last preceding delivery in October, 1966. See United States ex rel. Edwards & Co. v. Peter Reiss Const. Co., 273 F.2d 880 (2 Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960); United States ex rel. General Electric Co. v. H. L. Lewis Const. Co., 375 F.2d 194 (2 Cir. 1967). As already noted, the record discloses that a delivery of materials was made on October 19, 1966,

not more than ninety days before the valves were delivered on January 17, 1967. Because the appellants' argument that there may not be a lapse of more than ninety days between deliveries rests upon an erroneous factual assumption, we do not reach the legal question they seek to raise.

■ We realize that the rule we enforce in this case involves a hazard to the primary contractor whose unbonded subcontractor later finds himself in embarrassing financial straits and is unable to pay the supplier. This danger, of course, always attends a general contractor, regardless of any dispute over the timeliness of the materialman's notice; but as this court, speaking through Judge Soper in Noland Co. v. Allied Contractors, Inc., 273 F.2d 917, 920–921 (4 Cir. 1959), had occasion to say:

> It is true that the notice provision of the Miller Act is designed to afford protection to the prime contractor by fixing the date beyond which, in the absence of notice, he will not be liable for the subcontractor's debts; but this purpose, although important in itself, is subsidiary to the main purpose of the act to protect those whose labor and materials enter into the prosecution of the work; * * *.

Prime contractors well understand that they operate under the overhanging threat of Miller Act obligations that may arise against them if their subcontractors should fail to pay workers or materialmen. Prime contractors can readily protect themselves against their subcontractors' defaults by making appropriate payment reservations or by exacting performance bonds; and we understand that these precautions are prevailing practices in the construction industry.

■ Finally, we mention an extraordinary contention advanced by the surety alone, not by the prime contractor. In its Answer to the Complaint, the defendant, the Fidelity and Casualty Company, made the astonishing assertion that it was "without sufficient information to admit or deny" whether it had bonded the prime contractor. No one, including Fidelity itself, seems to have noted this strange allegation. The contractor's Answer, prepared by the same lawyer who prepared the Answer for the surety company, admitted the existence of the bond. The Fidelity and Casualty Company supplied the lawyer for the prime contractor and took over the defense of the suit.

The trial proceeded without the plaintiff offering proof of the bond, plaintiff's attorney being under the impression that counsel for the surety had conceded the execution of the bond in his opening statement. The opening statements are not included in the record, but the attorney who participated in the trial for both defendants at no time sought to disassociate his client, the surety company, from the admission made by him for his other client, the general contractor, in its Answer. At trial, all participants apparently considered that the Fidelity and Casualty Company was in fact Andrews' surety. The testimony concerned only the tardiness of the notice, not any issue over the execution of the bond. The contest over the former issue would have been a total irrelevance so far as the bonding company was concerned, if in fact no bond was in existence. Yet no defense other than late notice was suggested in the course of the testimony.

Not until the defendants moved for dismissal at the close of the plaintiff's case did the surety bring its Answer to the court's attention. The District Judge recognized the point, based on Fidelity and Casualty's failure to admit or deny an allegation of the Complaint, as frivolous shadow boxing. The Judge properly stated that if the surety's equivocal Answer had been adverted to earlier he would not have allowed this obviously specious pleading to stand. The surety's brief leaves us in some doubt as to whether it seriously relies on the point; but in any case, its position is utterly untenable in the present circumstances.

The judgment of the District Court is Affirmed.