**JOHNSON SERVICES COMPANY**

v.

**TRANSAMERICA INSURANCE COMPANY and Penner-Ring Co., a partnership, et al.**

**Civ. A. No. 70–C–113.**

United States District Court, S. D. Texas, Corpus Christi Division.

Aug. 3, 1972.

Walter Dunham, Jr., Corpus Christi, Tex., for plaintiff.

James R. Harris, Corpus Christi, Tex., for defendants.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

This is a diversity case. Plaintiff brought this suit to recover $26,650.00, being the balance due it for the installation of a temperature control system in the new Post Office facility in Corpus Christi, Texas. The Defendants are Penner-Ring Co., a partnership, as principal, and Transamerica Insurance Company, as surety, on a labor-and-material payment bond furnished to the United States.

The method used for providing such facility was a lease-back arrangement, pursuant to certain provisions of 39 U. S.C., § 2103 et seq., by which the government invited bids on the construction of such Post Office facility, and agreed to lease said facility from the successful bidder upon satisfactory completion of the project. The Post Office Department published its advertisement for bids on March 29, 1968. The Defendant Penner-Ring Co., a partnership composed of Joseph Penner, Seldon Ring and Ellis Ring, who are also sued individually, submitted a bid in the form of an agreement to lease, which was accepted by the Post Office Department on June 24, 1968. Shortly after the acceptance of its bid by the government, in compliance with the requirements of the advertisement for bids, and of the agreement to lease, Penner-Ring Co. executed and submitted to the government a performance bond in the penal sum of $1,556,800.00, and a labor-and-material payment bond in the penal sum of $622,720.00. The Defendant Penner-Ring Co. was named as principal, and the Defendant Transamerica Insurance Company was named as the surety on each bond.

Following the acceptance of its bid and the execution of the agreement to lease, Penner-Ring Co. acquired the government's interest in and to the land on which the facility was to be constructed, and, on or about July 22, 1968, executed a contract with Braselton Construction Company of Corpus Christi, Texas, for the construction of such facility. The facility was to be constructed on land which was not owned at the time by the government, and government funds, as such, were not used to finance its construction; so, Penner-Ring Co. made its own financing arrangements. Subsequently, Braselton Construction Company, as principal, and Insurance Company of North America, as surety, executed and furnished to Penner-Ring Co., as owner, an Hardeman Act statutory payment bond in the penal sum of $2,135,000.00, which bond was approved by Penner-Ring Co. on or about October 10, 1968.

Thereafter, Braselton Construction Company, the general contractor, executed a sub-contract with James R. Godbe, individually and d/b/a Godbe Mechanical Contractors, to act as the mechanical contractor for the job. Godbe subsequently executed a contract with the Plaintiff, Johnson Services Company, under the terms of which Plaintiff was to furnish the labor and material required to install a complete workable temperature control system for use in the Post Office building. The total amount of Plaintiff's contract with Godbe was $43,900.00. Godbe later defaulted in the payment for the labor done and materials furnished by a number of contractors under him. Among those who were not paid in full was Plaintiff Johnson Services Company.

The building was accepted by the United States Post Office Department on or about November 21, 1969, and the City of Corpus Christi issued a certificate of occupancy on November 26, 1969. The Post Office facility was not actually put into use until late December, sometime after Christmas, 1969. At this point, Penner-Ring Co. had already conveyed the land to Richard "Red" Skelton and wife, Georgia Davis Skelton, and

they executed a lease of the premises dated December 1, 1969, to the United States government. Formal dedication of the facility was not held until March 14, 1970.

By letter dated April 2, 1970, Johnson Services Company notified Penner-Ring Co., as principal, and Transamerica Insurance Company, as surety, that there was still owing to it the sum of $26,650.-00 for material and labor furnished under Godbe's sub-contract for use in the Post Office facility. In the letter, Plaintiff told the Defendants that the notice was given, pursuant to the provisions of the $622,720.00 labor-and-material payment bond upon which this suit is based, within ninety (90) days after Plaintiff did or performed the last of the work or labor or furnished the last of the materials for which the claim was made.

The Defendants contended on their motion to dismiss, and advocated on the trial of this case, that they should prevail because (1) the purpose of the bond sued upon was to protect the United States' interest as obligee and it was not for the benefit of mechanics and materialmen unless the government took over the United States Post Office project; (2) Texas provides one method, i. e., an Hardeman Act bond, which Defendants Penner-Ring required of the contractor Braselton, to protect Defendants from suit and judgment; (3) Plaintiff's pursuit of its Hardeman Act remedies in state court resulted in an election of remedies and Plaintiff is thus barred from recovery herein; (4) Plaintiff has failed to show it served the required notices on the principal and surety within the ninety (90) day period required by the bond; and (5) Plaintiff is judicially estopped by alleged judicial admissions to claim the work was not completed more than ninety (90) days prior to the date of such notice.

The Plaintiff has countered that (1) the bond of Defendant Transamerica was on Post Office Department Form 1414–E, which was required by the Post Office Department for the use and bene-fit of claimants who furnished labor and materials in the construction of this project, and it is a beneficiary under said bond; (2) Texas law concerning election of remedies is not applicable, but Plaintiff is entitled to pursue either remedy, so long as it does not result in double recovery; and (3) there has been no judicial estoppel.

After hearing arguments on the motion to dismiss, it seems plausible to say that the controversy involves a conflict between policies of the State of Texas and of the Federal government, and that there are few precedents to assist the Court, one way or the other. The state policy, whose theory is espoused by Defendants, calls for surcease of this suit, either via an Hardeman Act bond or at least by an election. On the other hand, a Federal mandate, calling for a bond which is to protect the same claimants as are protected under the state law, should not be ignored or even necessarily limited.

The bond upon which the Plaintiff sues in this case was dated July 10, 1968, and the principal on it, as we have already pointed out, was Penner-Ring Co., and the surety was Transamerica. The bond was given to the government "for the use and benefit of claimants as hereinbelow defined, in the amount of the above penal sum ($622,720.00) for the payment whereof principal and surety bind themselves"; and it further provided "the condition of this obligation is such that if the principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material which prior to occupancy by the government was used or reasonably required for use in the performance of this agreement * * *." This bond also defines a claimant "as one having a direct contract with the principal or with a general contractor of the principal, *or with a sub-contractor in privity with either* of them, for labor, materials, or both * * *," (emphasis added).

In this sort of bond, the principal and surety jointly and severally agree with the government "that every claimant, as

herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimants' work or labor was done, performed, or materials were furnished * * * may sue on this bond." No suit or action shall be commenced under such a bond by any claimant unless the claimant "shall have given written notice to the principal and to the surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last materials, for which such claim is made * * *."

■ The fact that Plaintiff would not be able to fix any lien against property owned by the United States of America nor recover anything from the government because of the default of Godbe Mechanical Contractors, does not eliminate Plaintiff's right to proceed against the principal, Penner-Ring Co., and the surety, Transamerica. There is nothing in the bond which even implies that it is not to become effective unless the government actually takes over the completion of the project, or that the benefits provided for any claimants shall become effective *only* in the event any sub-contractor in privity with the principal or the general contractor, who has been injured financially through someone else's fault, is entitled to fix a lien or to recover directly against the government. To say Plaintiff, a claimant as defined in the bond, did not, at any time, acquire rights under the bond would be to nullify the effectiveness of the bond and eliminate the reason for which it was given in the first place.

■ It is obvious from reading the labor-and-material payment bond here in controversy that it contains similar, if not identical, provisions as a Miller Act bond. One of the purposes of the Miller Act is to protect laborers and suppliers who furnish labor and materials for use in United States government buildings. The Postal authorities must have had such a purpose in mind when Form 1414–E was prepared; else, why the bond at all? It is difficult to conceive that any language could more clearly evidence a purpose to protect claimants such as Plaintiff than the language contained in the bond upon which Plaintiff sues.

■ So far, we have treated Plaintiff as a claimant under the bond. There can be little doubt that Plaintiff clearly falls in that category. Plaintiff had a contract with a subcontractor, Godbe Mechanical Contractors, who was in privity with the general contractor, Braselton, of the principal, Penner-Ring Co., and so was a beneficiary of the provisions of the bond. The Plaintiff, Johnson Services, has the right to sue. N. O. Nelson Company v. Stephenson, Tex. Civ.App., 168 S.W. 61, writ refused.

■ Now, we are obliged to consider the effect of Plaintiff's state court action on the likelihood of recovery in this suit presently under consideration. Such previous action in the District Court of Nueces County, Texas, was against Braselton Construction Company and its surety, Insurance Company of North America, as well as against the defaulting sub-contractor, Godbe Mechanical Contractors. It was based upon the Hardeman Act bond, Article 5452, as amended in 1961, and Article 5472d, Vernon's Ann.Tex.Civ.St., and Plaintiff, Johnson Services, was seeking to recover for certain of the labor performed and materials furnished by it to said Godbe Mechanical Contractors on the Post Office job.

Although Plaintiff's recovery in the Hardeman Act suit in the state court was limited because of the manner in which the notices were required to be given, the Plaintiff did recover and was paid for some of the labor performed and materials furnished here sued for. The amount collected has been stipulated and Plaintiff's claim presently being submitted has been reduced by such amount. Defendant contends that Johnson Services, by bringing the state court action, made a choice under the doctrine of election of remedies, and is thus es-

topped to maintain this Federal Court suit.

However, to answer the election-of-remedies question, we need to compare this Federal Court suit with the earlier state court action. We have here a suit brought by Plaintiff Johnson Services against Defendants Penner-Ring Co., the principal on the bond, and against Transamerica, the surety, neither of which were parties to the state court action. The Plaintiff contends the difference in the named Defendants, the nature of the bond involved, and various other distinguishing facts are such that the pursuit of the state court action did not constitute an election of remedies. The procedures which must be followed under the Hardeman Act bond, by way of notice, are considerably different than the nature of the notice required under the other bond, which was executed by Transamerica as surety, and there is nothing to indicate that the total recovery could have been exactly the same under both bonds, provided adequate notice to satisfy both bonds had been given. Considering the several distinctions, and because the remedies under the two bonds are consistent, the Court concludes there was no election of remedies. Russell v. Sarkeys, 286 F.2d 736 (5th Cir. 1961).

■ The next issue to be resolved is whether Plaintiff has met the express requirements of the labor-and-material payment bond with regard to the form of notice and the time within which such notice had to be submitted to the contractor, the owner and the surety. The bond provided that notice be given "within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials," as called for under the contract which required Plaintiff "to make a *complete workable* Temperature Control Installation." (Emphasis added.) Whether Plaintiff met that notice requirement will depend upon whether the work done by Plaintiff after January 2, 1970, was a part of the original

contract or was for the purpose of what is sometimes called warranty work, that is, correcting defects or making repairs after the job was complete. Trinity Universal Ins. Co. v. Girdner, 379 F.2d 317 (5th Cir. 1967). This case was explained in General Insurance Co. of America v. United States for Use of Moore & Son, 409 F.2d 1326 (5th Cir. 1969). Earlier, in United States for Use of State Electric Supply Co. v. Hesselden Construction Co., 404 F.2d 774, 776, the Tenth Circuit held work done "for the 'purpose of correcting defects or making repairs following inspection of the project.' " would not toll the ninety (90) day notice provision of a Miller Act bond.

■ Beginning January 2 through March 20, 1970, at least three of Plaintiff's employees made approximately a total of ten service calls at the jobsite. The Court finds that, under ordinary circumstances, these service calls would have been warranty work rather than work necessary to complete the original contract. General Insurance Company of America v. United States for Use of Moore & Son, supra. There was, however, other work done by Plaintiff subsequent to January 2, 1970, which may satisfy the ninety (90) day notice requirement. The Plaintiff was called upon to conduct a training school for Post Office maintenance employees on January 21 through January 23, 1970; and, subsequent to January 26, Plaintiff had to rewire the chillers and recalibrate the cooling equipment, through no fault of its own. The Court finds the cooling system was not complete until the Plaintiff correctly wired the chillers and recalibrated the equipment. Trinity Universal Ins. Co. v. Girdner, supra; General Insurance Company of America v. United States for Use of Moore & Son, supra. Also, see United States for Use of General Electric Company v. Gunnar I. Johnson & Son, Inc., 310 F.2d 899 (8th Cir. 1962). Moreover, it was essential, within the specifications of Plaintiff's particular contract, that the Post Office employees be instructed in

the care and maintenance of the system. The Plaintiff held a school for the purpose of satisfying this contractual obligation. Although no cases have been submitted to the Court for the proposition that a school of this type would be necessary to complete this job, logic supports this result. It is reasonable to assume that, without such school, the system would have required continued maintenance by Plaintiff, whose business is clearly one of construction and not that of supplying continuing service of the equipment. At any rate, the running of the school by Plaintiff was obviously for the Defendant's benefit and the fact that the schedule was changed and the school was held after January 2nd rather than before Christmas of 1969 does not change the picture. The delay in holding the school could not be considered, under the evidence, to have been a sham for the purpose of extending time for filing notice. See Trinity Universal Ins. Co. v. Girdner, supra.

The two items of work done and labor performed just discussed were necessary to the complete installation of the temperature control system under Plaintiff's contract. The notice was filed within ninety (90) days of the last work done and labor performed, and so was effective.

██ Lastly, the Court must determine if Defendant's judicial estoppel defense is valid. The Defendant contends that in the state court, Hardeman Act, proceeding, Johnson Services stated under oath that its letter of December 16, 1969, was a notice of unpaid debt in connection with the construction of the United States Post Office building. Subsequently, an agreed judgment was entered that recognized the December 16 letter as perfecting Plaintiff's claim under the Hardeman Act. Thus, Defendant argues, under the authority of Long v. Knox, 155 Tex. 581, 291 S.W.2d 292

(1956), Plaintiff is judicially estopped from asserting in this Federal Court suit that the job in question was not completed until after January 2, 1970. *Long* and its progeny, however, are distinguishable. First, the state court action involved different defendants from those at bar. See Mitchell, Gartner & Thompson v. Young, 135 S.W.2d 308 (Tex.Civ.App., Fort Worth, writ ref. 1939). Secondly, the recovery granted the Plaintiff in the state court action is consistent with that sought here, since Plaintiff has reduced its allegation of damages here by that amount already obtained in the state court action based upon the Hardeman Act. The Defendant has further admitted that reliance is not a necessary factor for the operation of judicial estoppel, and, therefore, did not seek to show loss. Even so, it appears to the Court that none could be shown. The record reflects an actual gain to the Defendant. The offset to damages caused by the recovery in the state court action reduced Defendant's potential liability in this suit. There is no judicial estoppel here.

██ The foregoing memorandum constitutes this Court's findings of fact and conclusions of law, and, in view of same, it is ordered, adjudged and decreed that Plaintiff Johnson Services Company do have and recover of and from Defendants Transamerica Insurance Company, and Penner-Ring Co., a partnership, and Joseph Penner, Seldon Ring and Ellis Ring, individually and as partners, the sum of Twenty-one Thousand Seven Hundred Ninety Dollars ($21,790.00), with interest thereon from the date of this judgment; and that costs are charged against said Defendants. This is a diversity case based upon a contract bond and no provision was made therein for the payment of any attorney's fees; and, so attorney's fees are denied Plaintiff. This is a final judgment.