*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0024P (6th Cir.)
File Name: 00a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
for the use and benefit of
Interstate Mechanical
Contractors, Inc.,
  *Plaintiff-Appellant,*

   *v.*

INTERNATIONAL FIDELITY
INSURANCE COMPANY,
  *Defendant-Appellee.*

No. 96-6013

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 95-00585—Thomas W. Phillips, Magistrate Judge.

Submitted: August 4, 1999

Decided and Filed: January 14, 2000

Before: NELSON and MOORE, Circuit Judges;
McKEAGUE, District Judge.[*]

---

[*]The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

1

---

**COUNSEL**

---

**ON BRIEF:** John M. Neal, THE NEAL LAW FIRM, Knoxville, Tennessee, for Appellant. David R. Duggan, NICHOLSON, GARNER & DUGGAN, Maryville, Tennessee, for Appellee.

---

**OPINION**

---

McKEAGUE, D. J., delivered the opinion of the court, in which NELSON, J., joined. MOORE, J. (pp. 11-17), delivered a separate dissenting opinion.

DAVID W. McKEAGUE, District Judge. Plaintiff Interstate Mechanical Contractors, Inc. ("Interstate"), a subcontractor, commenced this action under the Miller Act, 40 U.S.C. § 270a *et seq.* Interstate seeks to recover against a payment bond issued by the defendant International Fidelity Insurance Co. ("Fidelity"), as surety for the prime contractor, Parmeco, Inc. ("Parmeco"). On cross-motions for summary judgment, the magistrate judge held that Interstate's complaint was not filed within the Miller Act's one-year statute of limitations period and granted summary judgment in favor of Fidelity. This appeal followed, and, for the reasons set forth below, we **AFFIRM** the judgment of the magistrate judge.

**I**

In November 1993 Interstate contracted with Parmeco to provide and install heating, ventilating, and air-conditioning systems at a U.S. Department of Commerce facility located in Morristown, Tennessee. Pursuant to § 270a of the Miller Act, Parmeco, as principal, posted a bond to guarantee payment under the contract with Fidelity as surety.

Under part 3.2 of the contract, Interstate agreed to install electric duct heaters, to coordinate the heaters' installation with other work, and to "[test] operate installed duct heaters to demonstrate compliance with requirements." Interstate further agreed to have substantially completed its work on the construction project by January 21, 1994, and to have finally completed all work by February 8, 1994. In fact, Interstate completed its construction in early June 1994, having installed two electric duct heaters as part of the heating, ventilating, and air-conditioning system. On June 17, 1994, after having been notified that construction was complete, the government took beneficial occupancy of the facility.

In late September or early October 1994, Sam Neeley, the subcontractor hired by Interstate to conduct testing of the system, noticed a discrepancy as he prepared his final reports. The numbers reported to him by his employees when they performed initial tests of the system did not satisfy the contract's requirements. Assuming that his employees had inaccurately performed the tests, Neeley went to the facility to inspect the system. He discovered that the two electric heaters installed into the ducts did not meet the contract's specifications. Although the heaters were the right size, fit properly into the ducts, and bore labels from the manufacturer indicating the correct wattage, in fact the heaters' electrical output did not conform to the contract's specifications. Interstate then replaced the heaters in early October, necessitating a third round of testing. Consequently, on October 18, 1994, Neeley returned to the facility and tested the heaters to confirm that they had been properly installed and that they were functioning as specified.

Exactly one year after this last test of the heaters, on October 18, 1996, Interstate filed suit in the Eastern District of Tennessee to recover the alleged $30, 967.00 that it claimed it was owed under the contract. Jurisdiction over the subject matter of the action was provided by 40 U.S.C. § 270b(b) and 28 U.S.C. § 1352.

The Miller Act requires that suits to recover against a payment bond be filed no more than "one year after the day on which the last of the labor was performed . . . ." 40 U.S.C. § 270b(b).  A magistrate judge heard the case by consent of the parties, and found that Neeley's inspection and testing of the heaters on October 18, 1994 was properly characterized as a correction or repair to work previously performed by Interstate.  Ruling that testing did not constitute "labor" under the Miller Act, the magistrate judge found that the statute of limitations barred Interstate's claim and awarded summary judgment to Fidelity.  Interstate filed a timely notice of appeal, and this Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 636(c)(3).

## II

This court reviews a district court's grant of summary judgment de novo.  *See Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 178 (6th Cir. 1996).  A motion for summary judgment should be granted "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  We view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587  (1986).

The Miller Act, 40 U.S.C. § 270a *et seq.*, requires a prime contractor on a federal construction project to post both a performance bond and a payment bond.  The payment bond provides security to persons who supply labor or materials for the project.  Such suppliers are precluded from filing liens on government facilities, and instead are granted a federal cause of action to satisfy any deficiency in payment by the prime contractor.  Because of the remedial nature of the Act, its provisions are to be liberally construed.  However, recovery under the Act requires a plaintiff to bring a claim within the Act's one-year statute of limitations period. *See United States*

purposes of § 270b(b).  Rather, a court should determine whether the work was performed prior to contract completion, as in the case of a punch list, or was performed after the project was completed under a warranty.

The record before us is incomplete.  Based upon what is before the court, however, I see no evidence that the work performed by Interstate and its subcontractor in October 1994 was performed after the contract was completed.  Thus, I would remand the case for further consideration in light of the foregoing analysis.

Furthermore, the circumstances in which the heaters were reinstalled suggest ongoing contract work rather than warranty work. Apparently, the original heaters were installed in April, May, or June 1994. Neeley stated in his deposition that "[w]e were there probably six or seven times off and on from then until October the 18th." J.A. at 42. Apparently, Neeley discovered the heater installation error in early October. From what can be gleaned from the record before the court, it appears that Neeley was on site during this period performing the balancing and testing required under Interstate's contract. Interstate's contract specified that "[t]est runs shall be made over the full design load range where possible and shall continue for as long as necessary to demonstrate that systems will operate as designed." J.A. at 37. The contract also specified that "[a]ny piece of equipment or any item not meeting the system requirements shall be repaired or replaced and the systems rebalanced *until the performance is confirmed*." *Id.* (emphasis added). Apparently, the installation error was discovered in the course of these tests and the corrections followed in accordance with the contract. If this is so, this work should be held to constitute § 270b(b) labor, unless it is shown clearly that the project was accepted as complete prior to October 1994 despite Interstate's failure to comply with the testing requirements of the contract.

Often the final labor performed under a construction subcontract will be in response to a punch list. The punch list may include items omitted by the subcontractor or work that inspection indicates must be repaired or replaced. In either case, the completion of the punch list work constitutes labor performed under the contract, and this is well understood within the construction industry. To hold that corrective work performed pursuant to such a punch list does not constitute labor performed within the meaning of § 270b(b) would be inappropriate and, because contrary to everyday understanding, would create a trap for the unwary and undermine the protective effect of the Miller Act. Accordingly, I believe that the corrective or remedial nature of the work performed should not be dispositive for the

*ex rel. Consol. Pipe & Supply Co. v. Morrison-Knudsen Co.*, 687 F.2d 129, 131 (6th Cir. 1982); *United States ex rel. Martin Steel Constructors Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984); *Canion v. Randall & Blake*, 817 F.2d 1188, 1191 (5th Cir. 1987).

The Act provides a supplier of labor or material who has not been paid in full a right of action to sue on the payment bond. *See* 40 U.S.C. § 270b(a). In order to provide repose, however, the Act specifies that "no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied . . . " § 270b(b). The meaning of the words "labor" and "material" is not self-evident from an examination of the text alone. Unfortunately, turning to the Miller Act's legislative history provides no more insight in interpreting § 270b(b). Prior to a 1959 amendment, the limitations period under the Act commenced on the "date of final settlement" of the contract. *See* S. Rep. No 86-551 (1959), *reprinted in* 1959 U.S.C.C.A.N. 1995. In amending the provision, Congress sought to relieve the government of the burden of establishing final settlement dates and to provide "those entitled to sue . . . a simple, fixed, and certain method for determining the period within which the suit must be filed." *Id.*, at 1996. Despite Congress' stated intention, the courts that have been called upon to interpret § 270b(b) have not found the task of establishing the limitations period under the revised statute to be simple, fixed, or certain.

This Court has not previously considered in a published opinion exactly when "the last of the labor was performed or material was supplied" for purposes of § 270b(b). As a question of statutory interpretation, we consider the issue de novo. *See Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir. 1998). We agree with the majority of courts that have interpreted the phrase and have concluded it connotes more than mere substantial completion or substantial performance of the plaintiff's obligations under its contract. *See United States ex rel. Austin v. Western Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964). Furthermore, we agree that

work done at the request of the government and pursuant to a warranty, subsequent to final inspection and acceptance of the project, falls outside the meaning of labor performed as set forth in § 270b(b). If post-completion work performed pursuant to a warranty could toll the Miller Act's statute of limitations, then the surety would have no repose until all such warranties expired. The challenge before the Court is to assess whether tests of replacement components fall between substantial completion of the project and its final completion, and are thus included as labor under the Act, or whether such tests are more properly analogized to warranty work and excluded.

The majority of circuits that have addressed this issue have held that remedial or corrective work or materials, or inspection of work already completed, falls outside the meaning of "labor" or materials" under § 270b(b). Hence, performing such work or supplying such materials will not toll the Miller Act's one-year statute of limitations. *See, e.g., United States for the use of Billows Elec. Supply Co. v. E.J.T. Constr. Co., Inc.*, 517 F.Supp. 1178, 1181 (E.D. Pa.1981), *aff'd* 688 F.2d 827 (3rd Cir.), *cert. denied*, 459 U.S. 856 (1982); *United States for the use of Magna Masonry, Inc., v. R.T. Woodfield, Inc.*, 709 F.2d 249, 250 (4th Cir. 1983); *United States ex rel. Austin v. Western Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964); *United States for the use of State Elec. Supply Co. v. Hesselden Constr. Co.*, 404 F.2d 774, 776 (10th Cir. 1968). The majority rule requires the trier of fact to distinguish "whether the work was performed . . . as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.'" *Austin*, 337 F.2d at 572-73 (quoting *United States ex rel. Gen. Elec. Co. v. Gunnar I. Johnson & Son, Inc.*, 310 F.2d 899, 903 (8th Cir. 1962)).

Although this line of inquiry has received criticism, this Court concludes the correction-or-repair versus original-contract test presents a useful framework to determine when the Miller Act's statute of limitations begins to run. As set forth in *Austin*, the correction-or-repair versus original-

inquiry, but not an unbounded one. Normally, the inspection and unconditional acceptance of a project by the government will indicate project completion. However, acceptance conditioned on the completion of a punch list does not constitute completion until the punch list work is accomplished. Of course the completion date specified in the contract is not dispositive.

Applying my proposed analysis to the instant case, I would hold that a material issue of fact exists that precludes the grant of summary judgment in favor of the defendant. Although the labor performed in replacing the duct heaters undoubtedly was corrective, the magistrate judge did not determine whether this corrective action took place before the contract was complete or afterwards as warranty work. I believe that the dispositive question is whether the reinstallation of the duct heaters at some time before October 18, 1994, occurred before the contract was complete. If it did, the work of Interstate's contractor, Neeley, on October 18, 1994, was § 270b(b) labor. The contract contained detailed air balancing and testing requirements, and the performance of this work constitutes labor as the term is used in § 270b(b).

It is not at all clear that Interstate's contract was complete when the duct heaters were reinstalled in October 1994. In his deposition, Terry Self, an Interstate official, stated that to his knowledge the company had never received notice that Interstate's work or the building had been accepted. Self did state in an August 1994 letter that "[t]o our knowledge, Interstate finished all work on this project in early June, 1994," but he did so in response to a letter from Parmeco that apparently asserted that Interstate had not completed its work. J.A. at 100. Self went on to note that "[i]f any work is unfinished, it would have to be in the nature of punch list work. This is the first project on which we have had difficulty finding out what work remains unfinished." *Id.*

_____

limitations period.

government with recognition that deficiencies remain. Correction of the deficiencies constitutes original contract work and § 270b(b) labor, however, because payment for the remaining work has been withheld pending completion. In speaking of deficiencies, the Comptroller General did not distinguish between omitted work and unacceptable work, nor should he have so distinguished, as correction of either deficiency in this circumstance should constitute § 270b(b) labor.

Citing this legislative history, the court in *Trinity Universal Insurance Co. v. Girdner*, 379 F.2d 317, 318 (5th Cir. 1967), held "that the 'last labor or materials' language [of § 270b(b)] is broad enough to include work performed upon the demand of the government to correct defects in the work as originally completed." As "[t]here [was] no contention that this work was a sham to extend the period of limitation," the court held that replacement of defective insulation and a seal constituted the last labor performed. *Id.*

Following the implication of the legislative history and agreeing with the *Trinity* court's interpretation of the Act and the history, I would hold that in ascertaining the § 270b(b) limitations period the dispositive question is whether the work at issue was performed or materials were supplied before the project was complete or after completion in accordance with a warranty.[1] This test yields a fact-intensive

---

[1] Referring back to the widget example, one may ask whether there is a qualitative difference between the performance of corrective work at the end of the project pursuant to a punch list and the performance of corrective work after project completion pursuant to a warranty. For the purposes of the Miller Act, I believe that the difference is significant. The obligation to make the final payment under a construction contract normally commences with the completion of the work, including the completion of punch list work. Thus, under a more logical approach, i.e., one that is based on contract completion, the commencement of the limitations period for suing to recover on the bond for nonpayment will coincide with the accrual of the obligation to pay. Remedial work performed pursuant to a warranty, on the other hand, should have no bearing on either the obligation to make final payment or on the

contract test provides a bright-line rule from which each interested party--the government, contractor, subcontractor, and surety--can gain a clear understanding of what work constitutes labor under § 270b(b). Furthermore, the majority rule induces the parties to structure their contractual obligations to account for the statute of limitations. Although the liberal purposes of the Miller Act may not be effectuated in each and every case, the benefits of certainty and administrability afforded by a bright-line rule here outweigh the inherent risk of over or under inclusive results presented by bright-line rules. *See generally* Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U.Chi.L.Rev. 1175 (1989). Hence, for the foregoing reasons, we adopt the majority rule for our Circuit.

### III

Having adopted the correction-or-repair versus original-contract test, we turn to address Interstate's particular contentions. Interstate claims a threshold question exists as to whether the inspection and testing that Neeley performed on October 18, 1995, qualifies as "labor" under the Miller Act. Interstate's phrasing of the issue, however, begs the ultimate question before this Court: whether the work performed by Neeley was pursuant to the original contract, or performed as a correction or repair.

Interstate argues the inspection and testing of the heaters by Neeley is "labor" because it was required under the contract, not performed in response to a government demand for repair. Fidelity argues in response that the case law clearly distinguishes between repair or remedial work and work performed under the contract; thus, inspection, testing and measurement are by their nature remedial and not "labor." Applying the correction-or-repair versus original contract test to the facts, we hold that the inspection and testing that Neeley performed on his second trip to the facility on October 18, 1995, were remedial in nature. While the contract required Interstate to test the heaters it installed, such testing was performed at least once by Neeley's employees prior to

the discovery of the defect in the heaters' manufacture and the government's beneficial occupancy of the facility. A second round of testing occurred in early October. Neeley himself went to the facility and tested the heaters, and discovered they were not manufactured to the contract's specifications. Interstate then replaced the heaters. Subsequently, Neeley returned to the facility on October 18, 1995, and tested the replacement heaters. These last tests were of corrective work performed by Interstate, and were not tests required by the original contract. Hence, while we do not decide whether inspection, testing, and measurement are by their nature remedial, we hold that tests of remedial or corrective work do not qualify as "labor" for purposes of the Miller Act.

Interstate further contends, however, that the tests Neeley performed on October 18, 1995, logically qualify as "labor" because the failure to perform such testing would have constituted a breach of its contractual obligations. Fidelity responds that an analogous argument was made and rejected by the Fifth Circuit in *General Insurance Company of America v. United States for the Use of Audley Moore & Son*, 409 F.2d 1326 (5th Cir. 1969). In *Audley Moore & Son*, the Fifth Circuit held that "[l]abor furnished in the prosecution of the work is not coterminous with the outer limits of all duties provided by the contract." *United States for the Use of Audley Moore & Son*, 409 F.2d at 1327. Although we agree with the holding in *Audley Moore & Son*, we are concerned that its ponderous language obscures its reasoning. A contractor's duties under a contract may extend, by virtue of warranty or other obligation, to a point in time far beyond that date when the project has been completed and the "last of the labor was performed or material was supplied" for purposes of the Miller Act. Interstate's argument would have this Court interpret the Miller Act to equate the term "labor" to the term "contractual duties." As a result, the statute of limitations period would commence only after the end of the warranty period, perhaps many years after the project's completion. To interpret the Miller Act as Interstate suggests would frustrate the policy of repose that the limitations period serves, and we find no support for such a construction in the

The Miller Act simply refers to labor performed, and, as noted above, the language is to be construed liberally. Although work performed under a warranty subsequent to project completion has no impact on the running of the limitations period of § 270b(b), I believe that a court must be careful to avoid excluding other labor from the protection of the Act. I would therefore conclude that the proper approach to the problem is to determine whether the work at issue is warranty work or work conducted prior to contract completion. *See Johnson Servs. Co. v. Transamerica Ins. Co.*, 349 F. Supp. 1220, 1225 (S.D. Tex. 1972) (stating test as whether the work "was a part of the original contract or was for the purpose of what is sometimes called warranty work, that is, correcting defects or making repairs after the job was complete"), *aff'd*, 485 F.2d 164 (5th Cir. 1973).

Although determining when the contract has been completed and the warranty period has begun may be more difficult than determining whether work is new or repair, the former approach finds strong support in the legislative history. In his letter proposing the 1959 amendment that replaced the "final settlement" language, the Comptroller General noted that an additional purpose to the amendment was to extend the protection of the Act beyond the settlement date of the contract in some instances:

> It sometimes happens, also, that a supplier will be called upon to furnish labor or materials after 'final settlement,' or even after the limitation has run, in connection with the correction of deficiencies after substantial completion and acceptance of the contract work and 'final settlement' (based upon withholding the value of the deficiencies). Under the proposed amendment, such suppliers will not have lost most or all of the protection intended by the Miller Act but will receive full protection for 1 year after furnishing labor or material.

S. Rep. No. 86-551, 1959 U.S.C.C.A.N. at 1999.

The Comptroller General describes a situation in which a project has been substantially completed and accepted by the

the project had been billed as complete before the replacements were delivered, and the court rejected the plaintiff's argument that the government would not accept the project as finished until the replacement equipment had been installed. *See id.* at 776.

The foregoing cases, like the approach taken by the majority in the present case, could be read as suggesting that whether remedial work performed constitutes labor performed for the purposes of the Miller Act limitations period turns on whether the same work has been done incorrectly in the past or whether the work has not been done at all. *See also Austin*, 337 F.2d at 573 & n.15 ("punch list" work comprising sixty items including painting, "finish plumbing," and "paving access road" was required for project completion and constituted original contract work). I believe, however, that this approach, which focuses literally upon the distinction between repair or replacement and the performance of omitted work, imports a false dichotomy into the analysis. *See, e.g., Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 173 (5th Cir. 1973) ("[S]weeping rules about 'repairs' offer little help in the necessary analysis.").

Indeed, a contract is deficient whether a certain widget specified is missing or is defective; after the contract has been accepted and the warranty period has begun, the contract is no more incomplete because of a missing widget than because of a defective one. Moreover, if a contractor discovers an error and, as required by its contract, corrects the work at an early stage of the project, it could not be reasonably maintained that such corrective work was not performed under the contract. The work may or may not be reimbursable under the contract, but it is not warranty work. If such corrective work constitutes contract work early in the project and midway through the project, it surely would be anomalous to conclude that such corrective work is of a different nature simply because the contractor discovered and corrected the deficiency at the conclusion of its labors.

Miller Act's text, legislative history, or in the applicable case law. We thus reject Interstate's proposed construction as contrary to the Act's language and underlying policy.

Lastly, Interstate argues that a distinction should be made between corrective work caused by the contractor's own error, and that necessitated by the error of a third party. Interstate suggests that corrective work caused by third party error should constitute labor under the Miller Act, because a contractor who repairs the defective work of others is less culpable than a contractor who repairs its own defective work. Fidelity replies that because defective materials are, in most cases, defective when they are supplied by the manufacturer, adopting a rule that includes the correction of such defects as labor performed would create an exception to the correction-or-repair versus original contract test that would swallow the rule. We fail to see the significance of the proposed distinction. Compared with the surety, the contractor who replaces defective material supplied by a third party is no more worthy of recovery than a contractor who corrects work that was initially improperly performed. In either case, the contractor, and not the surety, should bear the cost of correcting the defective labor or material. Contractors choose the manufacturers from whom they purchase their materials, and can seek to recover against such a supplier in the event that a manufacturer provides a defective product.

## IV

Because the correction-or-repair versus original contract test first enunciated in *United States ex rel. Austin v. Western Elec. Co.* offers predictability and administrability when applying the Miller Act's statute of limitations, we adopt it for our Circuit. Under this majority rule, tests of remedial work, or tests performed of replacement materials do not constitute labor under § 270b(b) for purposes of the Miller Act. The Act's inquiry focuses on the nature of the work performed, not its cause. Hence, under § 270b(b), neither repairs necessitated by work improperly performed by the contractor nor repairs necessitated by defective material supplied by a

manufacturer qualify as "labor performed" or "material supplied." For those reasons stated above, we **AFFIRM** the order of the district court granting summary judgment to Fidelity.

--------------------

**DISSENT**

--------------------

KAREN NELSON MOORE, Circuit Judge, dissenting. I respectfully dissent from the majority's decision to adopt the approach articulated in *United States ex rel. Austin v. Western Electric Co.,* 337 F.2d 568, 572 (9th Cir. 1964), which directs a court to ask "whether [certain] work was performed . . . as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project'" in those cases that involve a dispute over the statute of limitations contained in the Miller Act. *Id.* at 572-73 (quoting *United States ex rel. Gen. Elec. Co. v. Gunnar I. Johnson & Son, Inc.*, 310 F.2d 899, 903 (8th Cir. 1962)). I am concerned that this test, as it has been applied, has caused courts to focus excessively on the question of whether certain work constitutes a correction or repair and to lose sight of the more important question – was the project complete at the time the work in question was performed?

Two cases illustrate my concerns with the majority's approach. First, in *United States ex rel. Noland Co. v. Andrews*, 406 F.2d 790 (4th Cir. 1969), it was discovered, after the government had inspected and accepted a construction project, that two valves that had been required under the contract had never been furnished or installed. "It seems plain to us," the court stated, "that the installation of the two missing valves cannot be characterized as a mere correction of a defect." *Id.* at 792. Accordingly, the court held that provision of the missing valves constituted material supplied for the purposes of 40 U.S.C. § 270b(b).

Second, in *United States ex rel. State Electric Supply Co. v. Hesselden Construction Co.*, 404 F.2d 774, 777 (10th Cir. 1968), the court held that equipment delivered by the plaintiff to replace lost or damaged equipment "concerned materials used for repair or correction and not for the accomplishment of the original contract." The court found it significant that