**MICHIGAN STATE PAINTERS INSURANCE FUND et al.,**
Plaintiffs,

v.

**RON SIMMONS PAINTING, INC.,** Ronald Simmons, and Carol J. Simmons, individually and conducting business under the assumed name of Supreme Painting and Paperhanging, Defendants.

Civ. A. No. 93–74406.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 6, 1995.

418

Scott R. Fraim, Henneke, McKone & Fraim, Flint, MI, for Carol J. Simmons.

Jeffrey M. Lesser, Livonia, MI, for Painters L1052 Intern.

### MEMORANDUM OPINION AND ORDER DENYING THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the plaintiffs in this action have filed a motion for partial summary judgment. In addition, defendants Ronald Simmons and Ron Simmons Painting, Inc. ("Simmons Painting") have filed a joint motion for summary judgment. Oral argument on these motions was held on February 2, 1995. For the reasons discussed below, the court will deny both motions.

## I. Background.

The plaintiffs in this action are various employee benefit plans and an unincorporated labor union, the International Brotherhood of Painters and Allied Trades, Local Union No. 1052 ("the Union"). Plaintiffs are suing defendants Simmons Painting, Ron Simmons, and Carol Simmons, individually and conducting business under the assumed name of Supreme Painting and Paperhanging ("Supreme"), for unpaid fringe benefit contributions and related damages under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Plaintiffs allege that defendants are liable for unpaid contributions and liquidated damages because they breached several collective bargaining agreements that have been in effect between the Union and Simmons Painting.

Simmons Painting is a Michigan corporation that was incorporated on April 1, 1976. It is a painting contractor operating in the Flint, Michigan area. At the present time and during the period relevant to this lawsuit, Ron Simmons was the president and sole shareholder of Simmons Painting. Carol Simmons is Ron's wife and up until April 10, 1992, she was an officer and shareholder of Simmons Painting. After that date, Carol Simmons apparently stopped being an officer or shareholder of Simmons Painting, and she began what is alleged to be her own business, Supreme.

Simmons Painting first entered into a collective bargaining agreement with the Union effective on January 10, 1992. Subsequently, Simmons Painting has been subject to similar agreements up through April 30, 1994. The various collective bargaining agreements require Simmons Painting to make contributions to various fringe benefit trust funds on behalf of its employees who do specified work. Supreme has never been subject to a collective bargaining agreement.

It is the basic contention of plaintiffs that Ron and Carol Simmons and Simmons Painting used Supreme as an instrumentality to conduct business that would not be subject to a collective bargaining agreement when that was to their advantage. Plaintiffs claim that for purposes of ERISA, Simmons Painting and Supreme were a single employer. It is plaintiffs' contention that the two companies' management, ownership, operations, and labor relations were mixed to such a degree as to make them a joint employer subject to collective bargaining agreements. As such, Simmons Painting is obligated to make fringe benefit contributions for employees of Supreme who conducted work governed by the Union agreements. Similarly, as the owner and operator of Supreme, plaintiffs allege that Carol Simmons is equally liable for any unpaid contributions and liquidated damages called for by the various benefit plans. In addition, plaintiffs argue that Ron Simmons is the alter-ego of Simmons Painting. In this context, plaintiffs contend that the court can pierce the corporate veil represented by Simmons Painting and hold Ron Simmons personally liable for the unpaid contributions.

In their motion for partial summary judgment, plaintiffs are seeking a decision by this court that Simmons Painting and Supreme are a joint employer for purposes of ERISA. In addition, plaintiffs contend that there is sufficient evidence to show that there exist unpaid obligations for contributions and liquidated damages for the work performed by Ron Simmons and James Daly, an employee of Supreme and a former officer and shareholder of Simmons Painting. Specifically, plaintiffs allege that at least $23,856.00 is due for Ron Simmons's work for Simmons Painting and $19,718.40 for James Daly's work for Supreme. Presumably, were the court to grant their motion, plaintiffs would seek to recover for unpaid contributions and liquidated damages for all other employees of Supreme who performed qualified work. Finally, plaintiffs allege that Simmons Painting owes $202.70 for an untimely payment of contributions for work performed in May 1993.

Defendant Simmons Painting is seeking summary judgment on the basis that all fringe benefit contributions required under the collective bargaining agreements have been paid. In addition, Simmons Painting claims that it is not a joint employer with Supreme. As a result, it claims that it de-

serves summary judgment. Ron Simmons claims that officers and shareholders cannot be held personally liable for unpaid contributions and damages under ERISA. Furthermore, Ron Simmons claims that plaintiffs cannot pierce the corporate veil so as to make him personally liable as an alter-ego of the corporation. Carol Simmons has not joined in defendants' motion for summary judgment, either on her own behalf or on behalf of Supreme.

## II. Standard of Review

■■■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■■■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■■■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

In resolving the motions brought by the parties, the court will have to decide whether Simmons Painting and Supreme are a joint employer for purposes of ERISA and the relevant collective bargaining agreements. If the court decides that the two entities are a single employer, then they would be liable for unpaid fringe benefit contributions and

related damages. In addition, the court must decide if Ron Simmons is the alter-ego of Simmons Painting. If he is the alter-ego, then he would be personally liable for contributions and damages owed by Simmons Painting. The court will address each of these issues in turn.

### A. Joint Employer Status

■■■ In determining whether two companies can be considered a joint employer for purposes of liability under ERISA and a collective bargaining agreement, the court must consider the following four factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Distillery, Wine & Allied Workers Int'l Union v. National Distillers & Chemical Corp.*, 894 F.2d 850, 852 (6th Cir.), *cert. denied*, 498 U.S. 820, 111 S.Ct. 66, 112 L.Ed.2d 40 (1990); *see International Longshoremen's Ass'n v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 38 (1991); *Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir.1982). The resolution of this question is essentially a factual issue. *Boire v. Greyhound Corp.*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). In making its decision, the court will consider each of the four factors delineated by the Sixth Circuit with reference to the operations of Simmons Painting and Supreme.

### 1. Interrelation of Operations

Plaintiffs have presented substantial evidence to indicate that the operations of Simmons Painting and Supreme were closely interrelated. Plaintiffs assert that both companies shared the same offices, management, owners, and employees. In particular, plaintiffs claim that Ron Simmons was the one person who was really in charge of the operations of both companies. They claim that the companies shared the same painting equipment, and that Supreme stored one of its paint trucks in the warehouse owned by Simmons Painting without charge. With regard to the conduct of the businesses, plaintiffs allege that the success of Supreme can be traced directly to the decline of Simmons Painting. The contention is that Supreme siphoned business from Simmons Painting whenever it was convenient for defendants to utilize the advantages of a non-union company. In this regard, plaintiffs allege that workmen were shifted between the two companies at will and through centralized control depending upon the daily needs of the two entities. Furthermore, James Daly asserts that Supreme employees conducted work on Simmons Painting contracts and *vice versa*. *See* James Daly aff.

In response, defendants strongly assert that Supreme and Simmons Painting are separate companies whose operations are not interrelated. In affidavits submitted by Ron and Carol Simmons, defendants contend that each company has its own employees, management, and ownership. They claim that the companies file their own tax returns, pay separate taxes, and pay for separate workers' compensation and other insurance. They have separate banking accounts, accountants, company vehicles, and telephone numbers. The businesses bid separately for jobs, pay their own employees, and do not loan each other money. Defendants have admitted, however, that Supreme occasionally borrows some equipment from Simmons Painting without charge. On the whole, though, defendants assert that the two companies are distinct and that they do not qualify as a joint employer under ERISA.

### 2. Common Management

In their motion for partial summary judgment, plaintiffs make many allegations and present numerous facts showing that Simmons Painting and Supreme shared common management. Plaintiffs have presented three affidavits from painters who worked for Simmons Painting and Supreme that state that Ron Simmons was "in charge" of both companies. *See* Robert Bottoms aff., Paul Daly aff., and Cory Kelly aff. In addition, James Daly asserts that Ron Simmons was completely in control of both companies, and that Ron Simmons told Daly to maintain a front with other employees that the two companies were separately owned. *See* James Daly aff. In this regard, Ron Simmons admits that on several occasions he tried to collect accounts receivable on behalf

of Supreme, and that he called suppliers on its behalf.

The affidavits further indicate that James Daly, as an employee of Supreme, hired employees for both companies and in fact offered them a choice between the companies during job interviews. Furthermore, the three employee affidavits allege that James Daly and Ron Simmons jointly managed the distribution of work and workers for different painting jobs for both companies, regardless of which company paid the particular employee's wages. Plaintiffs have also presented documents showing that James Daly signed invoices and contracts for Simmons Painting while an employee of Supreme. Finally, plaintiffs cite IRS documents and state reports filed by Simmons Painting in which Carol Simmons is listed as an officer of the company in 1992 and 1993. In addition, Carol Simmons is listed as spending twenty-five percent of her time in 1992 for Simmons Painting.

As discussed previously, defendants assert that management of Supreme and Simmons Painting is separate and distinct. In particular, Ron and Carol Simmons claim in their affidavits that Ron has never played a role in the management of Supreme. Defendants contend that the IRS documents and state reports cited by plaintiffs contained mistakes made by their accountants. *See* Duengel aff. and Marshall Simmons aff. They also claim that the documents signed by James Daly were really intended for Supreme and not for Simmons Painting as listed. Finally, Ron Simmons admits trying to collect some accounts receivable for Supreme, but he contends that these were isolated occurrences that he did as a favor for his wife.

### 3. Centralized Control of Labor Relations

As discussed above, plaintiffs have presented evidence indicating that Simmons Painting and Supreme operated with a joint control of labor relations. According to plaintiffs, it appears that the hiring and distribution of labor between the two companies was controlled jointly by Ron Simmons and James Daly. Many of the comments regarding common management are equally applicable with regard to this factor of the analysis.

In response, defendants deny that there was a centralized control of labor. Defendants do admit, however, that idle employees from each company were occasionally referred to the other company when business was slow. The consistent theme in the affidavits of Carol and Ron Simmons, however, is that the management and control of labor by the two companies was separate and distinct.

### 4. Common Ownership

Plaintiffs contend that Simmons Painting and Supreme shared common owners. In support of their contention, plaintiffs cite a 1993 Supreme ledger that lists three payments totalling $400.00 to Ron Simmons under the category of "Owner's Draws–Carol." In addition, money that was paid by James Daly for purchase of Simmons Painting stock was transferred to Supreme and applied toward the purchase of ownership in Supreme. Furthermore, without citation to any authority or evidence in support, plaintiffs claim that spousal attribution rules dictate that Ron and Carol Simmons jointly own Simmons Painting and Supreme.

Defendants strongly deny that there is any common ownership between Simmons Painting and Supreme. In their affidavits, Ron and Carol Simmons state that the two companies are separate and do not have common ownership. In addition, defendants have presented two affidavits from their accountants who claim that the Supreme ledger entries for Ron Simmons were errors.

### 5. Conclusion

As is evident from the examination of the facts concerning the four factors in the joint employer analysis in this case, there exist numerous genuine issues of material fact that cannot be decided through the motions presented by the parties. The joint employer analysis is a fact-intensive inquiry that cannot be resolved on summary judgment where both sides have presented contradictory evidence. As a result, the court

will deny the parties' cross-motions for summary judgment on this issue.[1]

### B. Liability of Ron Simmons

█ In his motion for summary judgment, Ron Simmons claims that as an owner and officer of Simmons Painting he is not liable under ERISA for the corporation's failure to make required fringe benefit contributions. As a result, Ron Simmons seeks to be dismissed from the case based upon the liability protection offered by the corporation.

█ Although Ron Simmons is correct that an owner/officer of a closely-held corporation cannot be held personally liable as an employer under ERISA, *Scarbrough v. Perez*, 870 F.2d 1079, 1082–83 (6th Cir.1989), he can still be held liable if plaintiffs succeed in piercing the corporate veil. *Id.* at 1083–84. In this case, plaintiffs have alleged that the corporate veil can be pierced so as to make Ron Simmons personally liable for any unpaid fringe benefit contributions owed by Simmons Painting. Plaintiffs' basic contention is that Ron Simmons is the alter-ego of Simmons Painting. The corporate veil can be pierced if

> 'there are substantial reasons for doing so' after weighing: (1) the amount of respect given to the separate entity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators. Factors to be considered include undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham.

*Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704–05 (6th Cir.1988).

In support of its alter-ego contention, plaintiffs cite the interrelation of Supreme with Simmons Painting, the undercapitalization of the corporation, and the fraudulent purposes for which Ron Simmons has utilized his company. Plaintiffs contend that Ron Simmons has allowed Supreme to use the equipment, employees, business, and management of Simmons Painting without charge. Plaintiffs cite all of the evidence showing that the two companies are a joint employer as support for their contention that Ron Simmons has shown no respect for Simmons Painting as a separate entity. In addition, plaintiffs assert that Simmons Painting is chronically undercapitalized based upon citations to figures presented in annual reports regarding retained earnings. Finally, plaintiffs assert that Ron Simmons has used the joint operation of Supreme and Simmons Painting as an artifice to avoid making fringe benefit contributions as required by the relevant collective bargaining agreements. Plaintiffs contend that if the corporate fiction of Simmons Painting is allowed to continue, then great injustice will be visited upon the employees and their benefit plans because Simmons Painting will be unable to satisfy any judgment against it. Upon this basis, plaintiffs are seeking a ruling from the court that Ron Simmons is personally liable for any debts incurred by Simmons Painting.

In response, defendants cite many of the facts used to dispute the joint employer claim discussed above. Defendants contend that Supreme and Simmons Painting are separate entities who have kept each other at armslength. Further, defendants assert that since its incorporation in 1976, Simmons Painting has scrupulously followed all corporate formalities and that Ron Simmons has always kept his personal affairs separate

---

1. The court also notes that the parties have presented conflicting evidence on the issue of contributions owed for the work performed by Ron Simmons. Plaintiffs claim that Ron Simmons performed fifty to sixty hours of qualified work each week. However, in his affidavit, Ron Simmons asserts that he performed no work subject to fringe benefit contributions under the collective bargaining agreements. Similarly, the dispute over the $202.70 in late payment damages is subject to a dispute between the parties. In addition, the contributions allegedly due for the work of James Daly depends upon the court's finding regarding joint employer status. As a result of these various conflicts, none of these issues can be resolved through the parties' summary judgment motions.

from the company. Defendants also contend that Simmons Painting is not undercapitalized for the type of business that it conducts. They assert that a small service business with varying revenue is often limited in its retained earnings. Finally, defendants cite the fact that Simmons Painting has always paid all required fringe benefit contributions and that all prior audits have shown compliance with the terms of the benefit plans as evidence that there has never been any intention to deny the employees what they deserve. Ron Simmons asserts that it has never been his intention to circumvent or defraud the collective bargaining agreements and that his wife's business has nothing to do with Simmons Painting. On this basis, defendants contend that plaintiffs have failed to show that Ron Simmons is the alter-ego of Simmons Painting or that any injustice to plaintiffs will result if the corporate status is respected.

The court finds that there exist genuine issues of material fact over whether Ron Simmons is the alter-ego of Simmons Painting. As is indicated above, both sides have presented substantial evidence to support their positions. As a result, resolution of this dispute is not possible by way of summary judgment. In this context, Ron Simmons's motion for summary judgment regarding his liability for any debt owed by Simmons Painting will be denied. Similarly, plaintiffs' request that they receive judgment on the alter-ego issue will also be denied.

### C. Conclusion

The court finds that summary judgment in favor of either plaintiffs or defendants is inappropriate. Both sides have presented evidence in support of their various positions. Furthermore, the nature of the questions presented—joint employer status and a piercing of the corporate veil—lend themselves to a fact-intensive inquiry. As a result, the court finds that, viewing the evidence most favorably to the non-movant in each case, there exist genuine issues of material fact that preclude summary judgment for either side.

### *ORDER*

**NOW, THEREFORE, IT IS HEREBY ORDERED** that plaintiffs' motion for partial summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that defendants Ron Simmons and Simmons Painting Company's motion for summary judgment is **DENIED.**

**SO ORDERED.**