**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0666n.06**
**Filed: August 5, 2005**

**No. 03-6431**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SOUTHERN ELECTRICAL HEALTH FUND; CAROLINAS ELECTRICAL WORKERS RETIREMENT FUND; NATIONAL ELECTRICAL BENEFIT FUND; CAROLINAS ELECTRICAL WORKERS JOINT APPRENTICESHIP & TRAINING FUND; ATLANTIC COAST CHAPTER - NECA; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS HEALTH AND WELFARE FUND; UNITED STATES, for use of; NATIONAL EMPLOYEE BENEFIT FUNDS; and COMMITTEE ON POLITICAL ACTION, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs-Appellees*, | ) ) ) | |
| v. | ) ) ) | On Appeal from the United States District Court for the Middle District of Tennessee |
| HERITAGE MUTUAL INSURANCE COMPANY; JOHN W. CATES, | ) ) ) | |
| *Defendants-Appellees*, | ) ) | |
| DONNA KELLEY and JOE KELLEY, d/b/a K.T.E. ELECTRIC; K.T.E. ELECTRIC, INC., | ) ) ) | |
| *Defendants/Third Party Plaintiffs Cross Claim Defendants-Appellees*, | ) ) ) | |
| v. | ) ) | |
| JOHN W. CATES CONSTRUCTION COMPANY, INC., | ) ) ) | |
| *Third party Defendant/Cross Claim Plaintiff-Appellant*. | ) ) ) | |

No. 03-6431
Southern Elec. Health Fund, et al v. Heritage Mut. Life Ins., et al

**Before:**     **BOGGS, Chief Judge; COOK, Circuit Judge; and BEER, District Judge.**[*]

**BOGGS, Chief Judge.**   This commercial dispute pits a collection of employee welfare benefit and pension plans (the "plaintiffs") against a construction company, John W. Cates Construction Company ("Cates Construction"), and its owner, John W. Cates ("Mr. Cates").  In the middle lies a second company, K.T.E. Electric ("K.T.E."), and its owners, who took on subcontracts on two construction projects for Cates Construction.  After a bench trial, the district court awarded the plaintiffs relief under the Miller Act.  It further found that Mr. Cates and Cates Construction were in contempt of an injunction that the court had previously entered and that Mr. Cates, as a fiduciary under ERISA, was liable for payments owed by K.T.E. to the plaintiffs.  Because Cates Construction and Mr. Cates's arguments on appeal are unconvincing and/or waived due to failure to raise the argument below, we affirm the district court.

**I**

**A**

The facts leading to the present dispute are less complex than the litigation that resulted. Plaintiffs are several employee welfare benefit and pension plans that dispense benefits to unionized workers.  The workers' employers contribute funds for these benefits to collection trust accounts, which then distribute money to the various plans.  K.T.E. is a Tennessee Corporation that specializes

<hr>

[*]The Honorable Peter H. Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

in electrical subcontracting projects. Its primary employees are a married couple: Donna Kelley, the President of the company, and Joe Kelley, the company's Vice-President. K.T.E. was one of the employers that contributed to the relevant funds.

Cates Construction, which is owned and operated by Mr. Cates, is a Kentucky corporation that performs general contractor work. It was awarded the contract to construct dormitories at Pope Air Force Base in North Carolina. It also received the contract to build two buildings at Fort Campbell, Kentucky/Tennessee. Cates Construction obtained payment and performance bonds for these projects from Heritage Mutual Insurance Co. ("Heritage Mutual"), another party to the present dispute. Cates Construction eventually entered into subcontracts with K.T.E. to do the electrical work on both sites. Prior to the start of construction on the first contract, the dormitory project at Pope AFB, K.T.E. expressed concern that the scope of the project and its distance from K.T.E.'s headquarters would extend the company beyond its financial means. To appease K.T.E.'s concern, Cates Construction amended its standard contract to include that "Cates Construction to be [sic] responsible for handling all monies, paying all invoices incurred under the sub-contract including payroll for KTE. Payroll to be payed [sic] weekly. . . . KTE is responsible for submittals and submit [sic] them in a timely fashion."

With this agreement in place, K.T.E. began the electrical work on the dormitories at Pope AFB ("Pope AFB project") sometime in February or March 1999. The parties worked out a process in which K.T.E. would submit monthly invoices to Cates Construction for the contributions due the employee benefit plans for the work done during the month, i.e., the payments K.T.E. owed the plaintiffs. Cates Construction would then pay the invoice amount to K.T.E., which would pass the

sum on to a collection trust account, which, in turn, would distribute the funds among the plaintiffs in this case.

Apparently pleased with the arrangement at Pope AFB, Cates Construction awarded a similar subcontract to K.T.E. to provide electrical construction services on its projects at Ft. Campbell. Work commenced on these projects in October 1999. The parties engaged in the same behavior concerning benefits payments as they did at Pope AFB, the only difference being that K.T.E.'s eventual payments went to a different collection account trust.

Problems began in December 1999 when K.T.E. did not send a payment to cover the employee benefits from that month's labor at the Pope AFB Project. The collection account trust did not receive any further payments from K.T.E. until July 2000. During this period, the relationship between Cates Construction and K.T.E. drastically changed. Joe Kelley, Vice-President of K.T.E., and Mr. Cates first discussed the missing payments in early April 2000. By May 3, 2000, the conversation had shifted to K.T.E.'s general financial problems and the prospect of selling K.T.E. to Cates Construction. Soon after the May 3rd meeting, the two companies entered into a closer arrangement. K.T.E. closed its previous office and operated solely out of Cates Construction's offices. K.T.E. closed its checking account, only to open a new account at the bank used by Cates Construction. Mr. Cates listed himself as the President of K.T.E. for this account and, at least initially, he was the account's sole signatory. At all times, the checks for this account were in the hands of Cates Construction employees or Mr. Cates himself. Though Cates Construction never bought K.T.E., the district court concluded that Cates Construction and its owner took financial control of the company following the May 3, 2001 meeting.

Despite this change in control, the collection account trust was still not receiving payments from K.T.E. The company did not make payments it owed for the work done on the Pope AFB Project for the period from December 1999–February 2000 until sometime in July 2000. K.T.E. never made payments for the work done from March–August 2000. According to the district court, these payments, with interest, come to $145,256.68. Similar problems arose concerning the Ft. Campbell Projects; K.T.E. failed to send payments for September and October 2000. The district court calculated that these payments, with interest, totaled $42,911.20.

While the plaintiffs were not receiving payments, the evidence suggests Mr. Cates was redirecting funds out of K.T.E. to another company, U.S. Rental, a wholly owned subsidiary of Cates Construction. Mr. Cates sent $34,000 to U.S. Rental without any invoice explaining the cause for the payment. Cates Construction eventually closed the K.T.E. checking account, transferring the balance to U.S. Rental.

**B**

The present case began when some of the current plaintiffs sued Donna and Joe Kelley in May 2000 for the failure to make payments for the work done on the Pope AFB project, alleging that the Kelleys' conduct violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, specifically 29 U.S.C. § 1145.[1] Because the Kelleys had not responded to the complaint, the plaintiffs secured a default judgment and a "temporary injunction" against them in August 2000. The temporary injunction called for the Kelleys to pay already-due contributions

---

[1]In January 2002, the plaintiffs amended their complaint to include K.T.E. as a party.

for work done on the Pope AFB projects and to pay future payments as they arose. Donna and Joe Kelley finally answered the complaint in March 2001. At that time, they also filed a third-party complaint against Cates Construction seeking the contractual remedy of indemnification. The next month, Cates Construction filed an answer and a cross-claim against the Kelleys and K.T.E. for breach of contract.

In March 2001, various plaintiffs began two other suits against Cates Construction, the Kelleys, and Heritage Mutual by filing complaints alleging that these parties were liable for missing payments under the Miller Act, 40 U.S.C. §§ 3131-3133 (formerly 40 U.S.C. §§270a-270d). The first suit concerned the payments owed for work done on the Ft. Campbell project. The second, which was originally filed in the Eastern District of North Carolina, dealt with the missing payments for work done at the Pope AFB project. An additional suit was filed on February 14, 2002, alleging that Mr. Cates was personally liable for breach of his fiduciary obligations under ERISA for the missing payments at the Pope AFB project.

One day later, on February 15, 2002, plaintiffs moved to consolidate these four cases. In November of that year, after the close of discovery, the plaintiffs, Kelleys, and K.T.E. reached a settlement, disposing of all claims made against the Kelleys or K.T.E. by the plaintiffs. A few days later, Mr. Cates, Cates Construction, and Heritage Mutual all moved for summary judgment, as did the plaintiffs. The district court denied the motions.

In preparation for trial, the parties filed a pre-trial order. The plaintiffs and K.T.E. made clear that the contents of the order supplanted the pleadings.[2] They alleged that Cates Construction was in contempt under the "temporary injunction" because Cates and K.T.E. acted as joint employers during the period (March–August 2000) in which K.T.E. was delinquent in sending payments concerning the Pope AFB Project. Plaintiffs continued to assert Miller Act liability against Cates Construction and Heritage Mutual for K.T.E.'s lack of payments on the Pope AFB project and the Fort Campbell projects.

Following a five-day bench trial, plaintiffs were awarded what can only be described as a clean sweep. The district court found Cates Construction in contempt of the "temporary injunction" originally issued against K.T.E. The district court also found that, under the Miller Act, Plaintiffs could recover from Cates Construction and Heritage Mutual the totals of K.T.E.'s delinquent payments from both the Pope AFB project and the Fort Campbell projects. Additionally, the district court held that Mr. Cates was liable as a fiduciary under ERISA. Finally, as to the breach of contract and indemnity claims between Cates Construction and K.T.E., the district court dismissed them as barred by the arbitration clause in the contracts between those two parties. Mr. Cates, Cates Construction, and Heritage Mutual have timely appealed.

**II**

---

[2]The order makes equally clear that Mr. Cates, Cates Construction, and Heritage Mutual did not agree. *Ibid.*

No. 03-6431
Southern Elec. Health Fund, et al v. Heritage Mut. Life Ins., et al

The district court found the appellants (or some subset thereof) liable for violations of the Miller Act, contempt of an injunction, and failure to act as a fiduciary under ERISA. As appellants challenge all three theories of liability before this court, our analysis is divided accordingly.

**A**

The Miller Act requires general contractors on federal construction sites to post payment bonds. *United States ex rel. Interstate Mech. Contractors, Inc. v. Int'l Fid. Ins. Co.*, 200 F.3d 456, 459 (6th Cir. 2000). These bonds allow individuals supplying labor or materials to a construction project to seek redress without filing a lien on the government facility. *See ibid.* The Miller Act also allows a party whose exclusive dealings have been with a subcontractor to seek compensation from the general contractor's bond, so long as proper notice is provided. *J.D. Fields & Co. v. Gottfried Corp.*, 272 F.3d 692, 696 (5th Cir. 2001); *see* 40 U.S.C. §3133(b)(2) ("A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor . . . ."). This right is not limited to individual laborers; the Supreme Court has found that employee welfare and trust funds can qualify to seek payment under the bond. *See United States ex rel. Sherman v. Carter*, 353 U.S. 210, 219-20 (1957) (allowing trustees of benefit fund to seek relief under the Miller Act); *United States ex rel. Int'l Bhd. of Elec. Workers, Local Union 692 v. Hartford Fire Ins.*, 809 F. Supp. 523, 525-26 (E.D. Mich. 1992) (applying *Carter* in post-ERISA context).

However, a party seeking to collect from the general contractor's bond must provide notice. The Seventh Circuit has summarized the requirements as "(1) notice must be given within 90 days

of the sub-subcontractor's last work; (2) the notice must 'stat[e] with substantial accuracy the amount claimed'; and (3) the notice must include 'the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.'" *United States ex rel. S & G Excavating, Inc. v. Seaboard Surety Co.*, 236 F.3d 883, 884 (7th Cir. 2001) (alteration in original) (quoting former 40 U.S.C. § 270b(a), now § 3133(b)). On appeal, Cates Construction and Heritage offer two challenges to the district court's conclusion that Cates Construction had sufficient notice of the delinquent payments: the first concerns whether the district court appropriately denied their motion for summary judgement; the second is the district court's factual conclusion after trial that these defendants had notice of the amount claimed to be owed for the Pope AFB and Ft. Campbell projects.

It is a well-established rule in our court that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *accord In re Best*, 109 F. App'x 1, 10 (6th Cir. 2004). Appellants point to a supplemental affidavit filed by Joe Kelley that discussed how his company, K.T.E., informed Cates Construction that payments had to be made on the two construction projects. However, this affidavit, which is consistent with Joe Kelley's deposition testimony, does not contradict previous affidavits filed by Joe Kelley.

In his first affidavits that were filed with plaintiffs' motion for summary judgment, Joe Kelley averred that he provided notice, in the form of numerous invoices, to Cates Construction about delinquent payments. In his deposition, which was held after motions for summary judgment

had been filed by both sides, opposing counsel elicited testimony that Joe Kelley did not personally deliver any invoices to Cates Construction. During that questioning, it became clear that the invoices were sent by one of Joe Kelley's employees. In a supplemental affidavit, Joe Kelley reiterated that it was one of his employees that sent the invoices. Assuming the rule in *Reid* applies with equal force to affidavits concerning statements made in previous affidavits, we cannot conclude that the rule would apply here. The critical issue is whether Joe Kelley's deposition and supplemental affidavit testimony *contradicted* his initial affidavits. *Reid*, 790 F.2d at 460; *Biechele*, 747 F.2d at 215. Joe Kelley's subsequent statements only clarify or elaborate on how he and his company provided notice to Cates Construction. Only in the strictest of logical senses can it be said that an employee delivering the invoices contradicts the notion that he, as the vice-president of the company, provided notice to Cates Construction. Therefore, nothing about Joe Kelley's supplemental affidavit makes improper the district court's denial of appellants' motion for summary judgment.

This leads us to appellants' second allegation of error concerning liability under the Miller Act. Appellants argue that the district court erred in calculating the total amount of damages due to plaintiffs because Cates Construction and Heritage Mutual can only be held liable for delinquent payments for work done on K.T.E.'s Pope AFB project and Ft. Campbell projects. They posit that such an amount is impossible to ascertain. The district court clearly disagreed and determined the amount of money owed for the Pope AFB project and the Ft. Campbell projects. Appellants therefore present an error of fact, which we review for clear error. Under the "clearly erroneous" standard, we reverse the district court only when we are "'left with the definite and firm conviction

No. 03-6431
Southern Elec. Health Fund, et al v. Heritage Mut. Life Ins., et al

that a mistake has been committed.'" *Bank of Lexington & Trust Co. v. Vining Sparks Sec., Inc.*, 959 F.2d 606, 609 (6th Cir. 1992) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

Upon review of the record, we are left with no such conviction. Appellants rely on K.T.E.'s monthly payroll reports, which were sent to plaintiffs and reveal only the total number of hours worked by an employee and do not distinguish between work done on Cates Construction projects and work done on other projects. This document is not enough to create a firm conviction that the district court made a factual error because, in part, an employee could have only been assigned to one site for the period in question. Moreover, other evidence shows that Cates Construction was given notice about the amounts owed. Cates Construction's accounts payable register listed the exact amounts due to plaintiffs for work done on the Pope AFB project. K.T.E. also submitted invoices stating the amounts due for work done at Pope AFB. Mr. Cates himself testified that his company received bills from K.T.E. concerning the work done for the two projects. He further testified that the bills differentiated one project from another, were reviewed by a Cates Construction project manager, and then approved by him. Though the record before us does not contain documents showing the exact amounts owed for the Ft. Campbell projects, there is no evidence directly suggesting that the amount of work done at Ft. Campbell is unascertainable. Given that such reports are in the record for the other project and Mr. Cates testified that he received bills for both, we cannot say that we have a "definite and firm conviction" that the district court erred in ascertaining the amount owed for the Ft. Campbell projects. For these reasons, appellants have

No. 03-6431
Southern Elec. Health Fund, et al v. Heritage Mut. Life Ins., et al

shown no grounds for reversing the district court's conclusion that they are liable under the Miller Act.

**B**

The district court also held Mr. Cates and Cates Construction in contempt of the "temporary injunction" it entered against K.T.E. On the eve of trial, the district court issued a pre-trial order that set out the various parties' theories of liability and defenses. In that order, plaintiffs and K.T.E. refined their theories of liability and agreed that the order supplanted their pleadings. Of particular relevance to this appeal, plaintiffs alleged that, during the relevant period, Cates Construction and K.T.E. were operating as joint employers. As a joint employer, plaintiffs claimed, Cates Construction should also be held in contempt for violations of the "temporary injunction" for failure to make benefits contributions for work done at Pope AFB. Appellants now argue that the district court erred in allowing plaintiffs to alter their theory.

Mr. Cates and Cates Construction erroneously assert that a party must file a motion for leave of the court to amend its pleadings. However, Federal Rule of Civil Procedure 15(a), its sole authority for this argument, "does not set forth any specific procedure for obtaining leave to amend." 6 Charles Alan Wright, Arthur Miller, & Mary Kay Kane, Federal Practice & Procedure § 1485 (2d ed. 1990). This failure to require a specific procedure is consistent with Rule 15(a)'s admonition that "leave to amend a pleading 'shall be freely given when justice so requires.'" *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) (quoting Fed. R. Civ. P. 15(a)). While leave to amend is usually sought via a motion, it may also be requested in open court. Wright, Miller & Kane, *supra*, § 1485; *see also PR Diamonds v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004)

(discussing district court's requirement based on local rules that motion for leave to amend be done by motion). The key concern is whether the opposing party is given notice and, therefore also, the opportunity to voice any objections. *See* Wright, Miller & Kane, *supra*, § 1485 (noting courts have found oral notice sufficient in such circumstances). Appellants were given the opportunity to state their objections to the amendments, and they did so. While this court has twice held that district courts did not abuse their discretion in denying requests for leave to amend made only in responses to motions to dismiss, *PR Diamonds*, 364 F.3d at 698-99; *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 783-84 (6th Cir. 2000)), *cert. denied* 531 U.S. 1145 (2001), the present context is clearly different. The district court did not err in allowing plaintiffs to supplement their pleadings via the pre-trial order.

Cates Construction and Mr. Cates further allege that, even if plaintiffs could request leave to amend without filing a motion, the district court abused its discretion in granting plaintiffs' request. While this court is more regularly called on to review a district court's denial of leave to amend, *e.g.*, *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 937 (6th Cir. 2004), we also review a district court's decision to grant leave to amend for abuse of discretion. *Vanderbilt Univ. v. DiNardo*, 174 F.3d 751, 758 n.3 (6th Cir. 1999); *accord Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995). "Rule 15 reinforces the principle that cases should be tried on their merits rather than the technicalities of pleadings, and therefore assumes a liberal policy of permitting amendments." *Inge*, 388 F.3d at 937 (quotation marks, citations, and alterations omitted). Accordingly, this court has previously cautioned that "[d]elay by itself is not sufficient reason to deny a motion to amend. *Notice and substantial prejudice* to the opposing party are critical factors

in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (alteration and emphasis added).

Thus, our inquiry cannot be limited to only the extent of plaintiffs' delay, but rather also must examine the prejudice that delay caused Cates Construction. Much of this case centers on the relationship between Mr. Cates, Cates Construction, and K.T.E. That relationship was the basis of the complaint extending ERISA fiduciary liability to Mr. Cates.[3] It was also the basis for the arguments advanced in K.T.E.'s answer and third-party complaint in the original action in which the injunction was issued. Neither Cates Construction nor Mr. Cates could seriously contend that the relationship between them and K.T.E. was not a core subject of litigation. In fact, that relationship was the subject of extensive discovery. *Cf. id.* at 459 (finding prejudice when plaintiff requested leave to amend that would have added new theories of liability requiring retaking of depositions and new, additional discovery). Because Cates Construction was not prejudiced by the plaintiffs' request for leave to amend, we hold that the district court did not abuse its discretion in granting that request.

Mr. Cates and Cates Construction properly raise one other objection to holding them liable for contempt.[4] They argue that they could not be held in contempt because they did not know the amounts K.T.E. owed for the Pope AFB project, which are the only contributions subject to the injunction. As discussed in part II.A, *supra*, however, the exact amounts due for K.T.E.'s work on

---

[3]That complaint was for the last case filed in the district court before the cases were consolidated.

[4]As will be discussed in part III, *infra*, appellants raise several issues for the first time before this court. Some of these new issues relate to the "temporary injunction" issued by the district court.

- 14 -

the Pope AFB are found in Cates Construction's accounts payable register. Thus, appellants have shown no error in the district court's decision to hold them in contempt of the injunction.

## C

Appellants also argue that the district court erred in finding that Cates Construction and K.T.E. were joint employers. While plaintiffs asserted that the two companies were joint employers in arguing that Cates Construction could be held in contempt of the injunction, the district court only relied on a finding of joint-employer status in finding Mr. Cates personally liable as an ERISA fiduciary. We review the district court's conclusion for clear error. *See Int'l Longshoremen's Ass'n, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902-03 (6th Cir.) (noting that whether two companies are acting as a joint employer is a factual issue and, ultimately, concluding that the district court's determination was clearly erroneous), *cert. denied*, 502 U.S. 804 (1991); *see also Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964) (question of status as joint employer is "essentially a factual issue"). Under this standard, reversal of the district court is inappropriate unless we have "'a definite and firm conviction that a mistake has been committed.'" *Bank of Lexington & Trust*, 959 F.2d at 609 (quoting *Anderson*, 470 U.S. at 573 (1985) (internal citations omitted)).

The factors to be considered in a determination of joint employer status are "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership." *Int'l Longshoremen's Assn.*, 927 F.2d 900 at 902; *see also Mich. State Painter's Ins. Fund v. Ron Simmons Painting, Inc.*, 875 F. Supp. 417, 421 (E.D. Mich. 1995) (applying standard to ERISA context). While Mr. Cates never owned both K.T.E. and Cates

Construction, he exercised full financial control over K.T.E. during the relevant period. The two companies worked closely together; they shared office space and K.T.E. was working extensively on Cates Construction projects. Moreover, the only labor relations that occurred during the period relevant to this dispute were payments to unionized employees and their pension funds. These payments were made (or not made) at the direction of Mr. Cates. On these facts, we cannot conclude that the district court clearly erred in concluding that Cates Construction and K.T.E. were joint employers during the relevant period. Thus, appellants have not given us reason to disturb the district court's holding concerning Mr. Cates's personal liability as an ERISA fiduciary.

### III

Appellants raise a number of other issues. They assert that various imperfections in the district court's "temporary injunction" render it invalid and, therefore, that they cannot be bound by it. Specifically, they assign error to the district court's apparent failure to consider whether or not plaintiffs should have to post a security bond for the injunction. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995); *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), *cert granted*, 440 U.S. 944, *and cert. dismissed*, 442 U.S. 925 (1979). They also claim that the "temporary injunction" should be construed as a temporary restraining order and not as a preliminary injunction. In addition, Cates Construction assigns error to the district court's dismissal of its breach of contract claims against K.T.E. on the basis of the contract's arbitration clause. Cates Construction argues that K.T.E. waived its right to assert arbitration by unfairly

No. 03-6431
Southern Elec. Health Fund, et al v. Heritage Mut. Life Ins., et al

delaying assertion of that right. *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002).

However, our review of the record below indicates that these issues were never raised before the district court. "This court has repeatedly held that it 'will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.'" *United States v. Ninety-Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) (quoting *In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003)). Consistent with that principle, we do not pass on the merits of these errors other than to demonstrate that our refusal to consider them does not result in a miscarriage of justice. Potential procedural errors in the creation of the injunction do not make it a plain miscarriage of justice to hold parties, who otherwise would be in contempt of the injunction, liable for such behavior. In addition, it was not a plain miscarriage of justice to dismiss for lack of jurisdiction Cates Construction's breach of contract claims against K.T.E. because the company can institute arbitration proceedings concerning these claims should it wish to do so.

Thus, having found no merit in any of appellant's assignments of error, we affirm the judgment of the district court.